# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| GO MORTGAGE, LLC, <br> 4215 Worth Avenue, Suite 320 <br> Columbus, Ohio 43219 <br><br> Plaintiff, <br><br> v. <br><br> KATIE CHIKONDE, <br> 1601 Balsam St., Apt. 4 <br> Lakewood, Colorado 80214 <br><br> Defendant. | Case No. <br><br> JUDGE <br><br> **COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREIN** |

Plaintiff Go Mortgage, LLC ("Go Mortgage"), for its Complaint against Defendant Katie Chikonde ("Chikonde"), alleges as follows:

## PRELIMINARY STATEMENT AND KEY BACKGROUND

1. This action seeks damages arising from Chikonde's acts of corporate sabotage, misappropriation of Go Mortgage's valuable confidential information and trade secrets, Chikonde's breaches of her duties of loyalty and good faith owed to Go Mortgage, violations of the Computer Fraud and Abuse Act, and breach of contract with Go Mortgage.

2. Go Mortgage is a national residential mortgage lender who helps families and individuals achieve their dreams of homeownership. Go Mortgage is based in Columbus, Ohio, and has offices throughout the United States.

3. Go Mortgage was previously known as GSF Mortgage Corp. ("GSF"). Chikonde was originally hired by GSF in January, 2021, as Director of Capital Markets.

4. In her role as Director of Capital Markets, Chikonde was provided unfettered access to the Company's sensitive and proprietary information including pricing and cost data,

127994846v1

consumer information and loan profitability analysis.  As a result, Chikonde executed a Nondisclosure and Confidential Agreement on December 4, 2020 (the "NDA"), the same day she signed an offer of employment.   Chikonde was also provided a company-issued computer and monitor. Chikonde executed a Telecommuting Agreement and Equipment Acknowledgement Form on January 4, 2021. These documents are collectively referred to as the "Agreement". A true and accurate copy of the Agreement is attached as Exhibit A.

5. GSF Mortgage was acquired in November, 2021, and it is now known as Go Mortgage.  Chikonde's Agreement remained in full effect as she continued working for Go Mortgage.

6. As part of her duties, Chikonde was the primary contact between Go Mortgage and its institutional lenders, investors and securitization counterparts. Chikonde managed Go Mortgage's warehouse lines, pricing, hedging and loan sales.

7. It is industry-practice for mortgage lenders to protect their interest rate positions through the use of hedging and pipeline management tactics, which involves the trading of securities and derivative financial products.  Hedging is a tool used to ensure the price change of a group of loans is offset by the value of a change in a specific set of securities that act as a counterweight to loan risk. Chikonde managed this process at Go Mortgage.  In essence, her primary duty was to ensure that the underlying data to be relied upon to effect these strategies was always correct and up to date.

8. Chikonde abruptly resigned on July 10, 2021, without notice.

9. Immediately prior to Chikonde's resignation, she contacted each of Go Mortgage's warehouse lenders, investors, as well as government sponsored enterprises, including Fannie Mae and Freddie Mac, for purposes of defaming Go Mortgage and its officers

and subjecting the company to ridicule. Furthermore, in preparation for her imminent departure, Chikonde changed Go Mortgage's passwords and altered specific company configurations with its counterparties. These actions would have a direct effect on whether Go Mortgage would be adequately protected in its management of interest rate risk.

10. At the time of Chikonde's resignation, Go Mortgage utilized a vendor named Optimal Blue LLC ("Optimal Blue"), which provides a SAAS platform for loan pipeline management. Prior to quitting her job, Chikonde managed Go Mortgage's Optimal Blue interface, which was designed to automate pipeline management and effectively manage the Company's interest rate risks.

11. Chikonde had been entrusted to serve as Go Mortgage's only authorized administrative user of the Optimal Blue interface. Chikonde was tasked with ensuring that all information to be used by Optimal Blue would be accurate and timely. Chikonde was Go Mortgage's sole administrative user of this system and was the only Go Mortgage employee in possession of Go Mortgage's login credentials and/or administrative access to Optimal Blue.

12. Upon information and belief, Chikonde introduced false and inaccurate information and erroneous settings within the Optimal Blue platform. She did so for purposes of causing economic damage and chaos in the wake of her departure.

13. The Federal National Mortgage Association ("Fannie Mae") provides liquidity to the single-family home loan market by purchasing and guaranteeing mortgage loans made by lenders and issuing debt securities and mortgage-backed securities that attract investors to finance housing in the United States.

14. Go Mortgage is a Fannie Mae-approved eligible Lender. The Company regularly originates loans that are intended to be purchased by Fannie Mae in the ordinary course of business.

15. Fannie Mae provides a portal to its approved lenders, which allows for them to provide a feed of their loan pipeline, for purposes of valuation and management and delivery of the loans to be sold to Fannie Mae. Third parties, including Optimal Blue, receive a live feed of pipeline data so that real time decisions can be accurately made related to hedging and market risk.

16. In her role as Director of Capital Markets, Chikonde was solely responsible for managing Go Mortgage's feed of information to and from Fannie Mae.

17. In preparation for her resignation, Chikonde introduced false information and inaccurate settings for Go Mortgage within the Fannie Mae portal.

18. Chikonde deleted business critical files from Go Mortgage's cloud hosted storage site immediately prior to her resignation. Chikonde also intentionally removed other Go Mortgage employees from accessing the storage site. Chikonde's actions were deliberate and disrupted Go Mortgage's business operations for weeks.

19. Upon information and belief, Chikonde's actions were malicious and/or designed to cause financial harm to Go Mortgage.

20. Chikonde's actions were effectuated by a vendetta against the Company, on account of her lack of job satisfaction and unhappiness with the terms of her compensation.

21. Chikonde's actions regarding Optimal Blue were not discovered until many months had passed from her termination. Go Mortgage discovered Chikonde's devious conduct in December, 2022, five months after she had quit. By then, Go Mortgage had sustained millions

of dollars of financial losses. But for Chikonde's malicious and deliberate actions, the Company would not have sustained financial harm arising from the management of its loan pipeline.

22. On the eve of her departure, Chikonde contacted multiple warehouse lenders, investors and government enterprises for purposes of defaming Go Mortgage and interfering with the Company's business relationships. Chikonde also accessed and deleted hundreds of Company documents and files as a malicious tactic to sabotage the Company and to cause financial harm and negative outcomes.. She deprived the Company of key data and information needed for the effective and orderly administration of the Company's business platform.

## PARTIES

23. Plaintiff Go Mortgage, LLC is an Ohio limited liability company with its principal place of business in Columbus, Ohio, located at 4215 Worth Avenue, Suite 320, Columbus, Ohio 43219.

24. Upon information and belief, Defendant Katie Chikonde is an individual residing at 1601 Balsam St., Apt. 4, Lakewood, Colorado 80214.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction to hear this action, in accordance with 28 U.S.C. § 1331, because Go Mortgage's claims arise under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The Court has supplemental jurisdiction over Go Mortgage's state law claims pursuant to 28 U.S.C. § 1367.

26. Go Mortgage suffered the injury and harm from Chikonde's conduct in Ohio.

27. Chikonde consented to being sued in federal court, under the laws of Wisconsin, pursuant to the Agreement.

28. Venue is proper in this Court under 28 U.S.C. § 1391.

29. Upon information and belief, Chikonde has permanent residence in Lakewood, Colorado, and is a citizen of Colorado. Throughout her employment, Chikonde worked remotely in Colorado.

## FACTUAL BACKGROUND

30. Go Mortgage is an independent mortgage lender and servicer, licensed in 36 states and the District of Columbia.

31. Chikonde was employed by Go Mortgage as its Director of Capital Markets from January 2021 until July 10, 2022.

### *Chikonde's role with Go Mortgage*

32. As Director of Capital Markets, Chikonde was entrusted with and had primary contact and responsibility between Go Mortgage and its institutional lenders, investors and securitization counterparts.

33. Chikonde managed Go Mortgage's warehouse lines, pricing, hedging and loan sales.

34. Chikonde had primary responsibility for overseeing hedge and product and pricing engine ("PPE") operations.

35. It is industry-practice for residential mortgage banks such as Go Mortgage to hedge their mortgage loan pipelines through the trading of securities. Much like futures contracts on financial instruments, these securities can be used to manage interest-rate risk. Hedging is a tool used to ensure the price change of a group of loans is offset by the value of a change in the hedging instrument. In essence, Chikonde's primary duty was to ensure the availability of accurate data in order to effect the hedging protocols.

36. Chikonde was provided, and she exercised, significant discretion in carrying out her duties on Go Mortgage's behalf. Go Mortgage reasonably relied on Chikonde to fulfill her duties.

37. Chikonde executed an NDA on December 4, 2020. She agreed to:

"Abide by a duty of good faith as an employee of [Go Mortgage], and in doing so [she] will act in accordance with Company policies and procedures in furtherance of Company objectives and in compliance with federal, state and local regulatory requirements. Employee will devote appropriate time and attention to their duties as assigned, and will not engage in . . . any business-related conduct that would be adverse to the interests of the Company."

### *Chikonde's willful and malicious actions immediately prior to her resignation*

38. On or about July 11, 2022, Chikonde was scheduled to meet with company officers at Go Mortgage's Wisconsin offices. Go Mortgage arranged and paid for her travel. However, she abruptly resigned and failed to appear, without prior notice.

39. Immediately prior to Chikonde's resignation, Chikonde attempted to contact each of Go Mortgage's warehouse lenders, investors and government sponsored enterprises ("GSE"), including but not limited to, Fannie Mae and Freddie Mac, for purposes of defaming and ridiculing Go Mortgage and its officers. Chikonde provided these counterparties with false information, including but not limited to, that Go Mortgage had no one to run its capital markets department.

40. Upon information and belief, Chikonde left voice mail messages for many of the Company's counterparties.

41. As a direct and proximate result of Chikonde's actions, Fannie Mae temporarily suspended Go Mortgage's seller/service number, which caused the Company to be unable to deliver loans.

42. As a direct and proximate result of Chikonde's actions, Go Mortgage's counterparties terminated and/or temporarily stopped their business relationship with Go Mortgage. Go Mortgage was forced to explain to these entities that it was ready, willing and able to continue its business processes.

43. Chikonde, through her company-issued laptop, accessed Go Mortgage's corporate data structure on its private network servers, and intentionally deleted and/or altered critical data from Go Mortgage's records.

44. Chikonde accessed security settings on Go Mortgage's servers and modified, deleted and/or changed Go Mortgage's passwords, security configurations and other information that would be necessary for the Company to perform its core functions.

45. Chikonde utilized Go Mortgage's confidential information in order to access the company's security configurations with the Fannie Mae and Optimal Blue platforms.

46. Upon information and belief, Chikonde introduced false information and inaccurate settings for Go Mortgage within the Optimal Blue and Fannie Mae platforms.

47. As a direct and proximate result of Chikonde's actions, Go Mortgage lacked visibility as to the accuracy of information it used to manage its financial risks. Chikonde's actions caused The Company to hedge its loan pipeline based on false and inaccurate information. Ultimately, Chikonde's conduct resulted in the Company realizing severe financial losses.

48. Go Mortgage utilizes a cloud hosted storage company called SharePoint, which is maintained by Microsoft. SharePoint has a number of "sites" which contain information about Go Mortgage's business dealings and information.

49. Chikonde was also entrusted as an "owner" of the site, which meant she had the capability to delete files and/or sites on SharePoint, as well as remove employees, i.e. members, of the sites.

50. Immediately prior to her resignation, Chikonde, through her company-issued laptop, deleted a site/group of files called "Secondary". Secondary contains critical information about Go Mortgage, its policies and procedures, including but not limited to, rate reviews, origination resources, jobs aids and videos for new employees, guidance on income requirements and calculations for potential loans, policies and processes on pricing, locking, and extending a loan, broker origination and processing training, temporary buydown products, customer credit and liabilities, sales video trainings, compliance policies, referral programs, bend loan programs, policies and procedures on adjustable rate mortgages and underwriting, and lender information.

51. Immediately prior to her resignation, Chikonde, through her company-issued laptop, also removed all designated members (Company officers) from the Secondary site, which meant they could not access critical business information.

52. In examining the user history logs following the deletion, it is apparent that Chikonde was the sole person responsible for deleting the site and denying access to the Company's other employees.

53. As a direct and proximate result of Chikonde's actions, Go Mortgage's business operations were disrupted for weeks until the deleted items were fully restored. Chikonde's conduct resulted in the Company realizing severe financial losses.

54. Immediately prior to her resignation, Chikonde forwarded Go Mortgage's confidential business information and trade secrets, from her work email address to her personal email address. For example, on July 11, 2022, Chikonde forwarded an email titled "7/7

Warehouse Summary" with 6 attachments that included loan information and customer names. On July 7, 2022, Chikonde forwarded an email from Optimal Blue regarding a specific customer and rate and price selection strategies. On July 7, 2022, Chikonde forwarded an email titled "CP Conv Loans for Sale" which detailed borrower names and loan information. On July 11, 2022, Chikonde forwarded an email from June 6, 2022 regarding Go Mortgage loans committed on June 6, 2022 for a July 5, 2022 settlement. This included borrower names and loan information. On July 6, 2022, Chikonde forwarded an email titled "Lock & Shop" containing Go Mortgage proprietary strategy on rate locks and hedge performance.

**FIRST CLAIM FOR RELIEF**
**(Computer Fraud and Abuse Act 18 U.S.C. § 1030)**

55. Go Mortgage incorporates by reference all of the allegations contained in the foregoing paragraphs as though fully set forth herein.

56. Chikonde intentionally accessed Go Mortgage's protected computer network, beyond the scope of her authority, and thereby obtained information and/or caused damage and loss, either intentionally or recklessly.

57. Chikonde used her unique scope of access in order to cause damage through Go Mortgage's protected computer network. She exceeded her authority and accessed Go Mortgage's account on the Optimal Blue and Fannie Mae Platforms, and knowingly entered false information and improperly altered Go Mortgage's security protocols.

58. Chikonde, through Go Mortgage's protected computer network, deleted and/or changed Go Mortgage's protected data on its platforms with Optimal Blue and Fannie Mae.

59. Chikonde, through Go Mortgage's protected computer network, also deleted Go Mortgage's corporate data folders with critical data from Go Mortgage servers, in excess of her authorized access.

127994846v1

60. Chikonde's actions caused Optimal Blue to receive an inaccurate and false feed of data from Fannie Mae. As a result, Optimal Blue was unable to effectively manage the financial risks associated with Go Mortgage's loan pipeline. Go Mortgage sustained millions of dollars of economic harm as a direct and proximate result of Chikonde's actions.

61. In order to conceal her access and/or to cause harm to Go Mortgage, Chikonde knowingly caused the transmission of a program, information, code or command and as a result of such conduct, intentionally caused damage without authorization and/or in excess of her authorization to Go Mortgage's protected computer network.

62. Chikonde exceeded her scope of authority by deleting the Secondary site from Go Mortgage's SharePoint storage program, along with removing members from the Secondary site.

63. Chikonde knew she exceeded her scope of authority by deleting Go Mortgage's Secondary site, which included confidential business information and trade secrets, and removing members from the Secondary site. Her actions were intentional.

64. As a direct and proximate result of Defendant's unlawful access to Go Mortgage's computer and/or Chikonde's knowing transmission of a program, information, code or command, Go Mortgage incurred damages and loss in an amount to be proven at trial, but which is in excess of $75,000.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Defend Trade Secrets Act – 18 U.S.C. § 1836)**

65. Go Mortgage incorporates by reference all of the allegations contained in the foregoing paragraphs as though fully set forth herein.

66. The Defend Trade Secrets Act prohibits the misappropriation of trade secrets.

67. Go Mortgage has developed and owns valuable trade secrets related to its products and services that are used in, or intended for use in, interstate or foreign commerce.

68. Go Mortgage's trade secrets have value because they are not generally known to the public and are not readily ascertainable.

69. Go Mortgage's trade secrets include proprietary information related to business methods, strategies, technologies, processes, products, intellectual property, procedures, customer lists, prospective customer lists, and other proprietary information on its customers and prospects, including their preferences, pricing information, and methods.

70. Go Mortgage has taken reasonable measures to safeguard its trade secrets.

71. In her role as Director of Capital Markets, Chikonde was provided access to a wide variety of Go Mortgage's trade secrets, including its list of customers and the terms of their loans, investor pricing and desired company margins, financial performance data, including loan level data as well as broader data reflecting performance of people, branches and regions of the company, the terms of warehouse relationships and investor-specific pricing strategies.

72. In order to fulfill her job duties, Chikonde was provided, and she retained, documents associated with the foregoing types of confidential information. She was also provided third-party names and references with whom she would need to communicate to perform her duties. Upon her resignation, Ms. Chikonde retained written and electronic documents and trade secret information belonging to the Company. In addition, Chikonde purposefully destroyed and deleted critical data folders and key information that was the property of Go Mortgage. Chikonde assumed full control of Company property and deprived Go Mortgage, its rightful owner, of the ability to access or use its information and data.

127994846v1

73. Upon information and belief, Chikonde is now employed with a financial institution that originates mortgage loans in competition with Go Mortgage.

74. Chikonde is using Go Mortgage's proprietary information for her own purposes and also on behalf of her new employer.

75. Chikonde's misappropriation and conversion of Go Mortgage's trade secrets was willful and malicious.

76. Chikonde was informed of and acknowledged the confidentiality of Go Mortgage's materials. Despite this, she misappropriated and/or destroyed the Company's information for her own purposes.

77. As a direct and proximate result of Chikonde's conversion and misappropriation of Go Mortgage's trade secrets, Go Mortgage has been and will continue to be, irreparably harmed, and has suffered monetary damages in an amount to be determined at trial.

78. Pursuant to 18 U.S.C. § 1836(b)(3)(B), Go Mortgage is entitled to damages for actual losses and unjust enrichment caused by Chikonde's misappropriation of its trade secrets.

**THIRD CLAIM FOR RELIEF**
**(Violation of the Wisconsin Trade Secrets Act – Wis. Stat. § 134.90 *et seq*.)**

79. Go Mortgage incorporates by reference all of the allegations contained in the foregoing paragraphs as though fully set forth herein.

80. The Wisconsin Uniform Trade Secrets Act prohibits the misappropriation of trade secrets.

81. Go Mortgage has developed and owns valuable trade secrets related to its products and services that are used in, or intended for use in, interstate or foreign commerce.

82. Go Mortgage's trade secrets have value because they are not generally known to the public and are not readily ascertainable by proper means.

83. Go Mortgage's trade secrets include proprietary information related to business methods, strategies, technologies, processes, products, intellectual property, procedures, customer lists, prospective customer lists, and other proprietary information on its customers and prospects, including their preferences, pricing information, and methods.

84. Go Mortgage has taken reasonable measures to safeguard its trade secrets.

85. Upon information and belief, Chikonde took the trade secrets and is using them with her new employer.

86. Chikonde was informed of and acknowledged the confidentiality of Go Mortgage's materials. Despite this, she misappropriated them anyway.

87. Chikonde improperly used Go Mortgage's trade secrets without express or implied consent.

88. Chikonde owed a duty to Go Mortgage to maintain its trade secrets and limit its use for proper means.

89. As a direct and proximate result of Chikonde's misappropriation of Go Mortgage's trade secrets, Go Mortgage has been and will continue to be, irreparably harmed, and has suffered monetary damages in an amount to be determined at trial, but which is in excess of $75,000.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract – Wisconsin Law)**

90. Go Mortgage incorporates by reference all of the allegations contained in the foregoing paragraphs as though fully set forth herein.

91. Chikonde entered into a contract with Go Mortgage, i.e. the Agreement, which is supported by valuable consideration.

92. The Agreement is valid and legally enforceable and was entered into freely and without duress by Chikonde and Go Mortgage.

93. The contract is reasonable in scope, and reasonably tailored to protect Go Mortgage's legitimate business interests.

94. Chikonde willfully breached her contract by, including but not limited to, intentionally acting in interests adverse to Go Mortgage during her employment.

95. The contract required Chikonde to safeguard Go Mortgage's trade secrets and to not use such information for her personal benefit or Go Mortgage's detriment.

96. Chikonde breached these contractual obligations by misappropriating and taking Go Mortgage's confidential information.

97. As a direct and proximate result of Chikonde's breached, Go Mortgage has sustained and continues to sustain actual, incidental, and consequential damages.

**FIFTH CLAIM FOR RELIEF**
**(Tortious Interference with a Business Relationship – Wisconsin law)**

98. Go Mortgage incorporates by reference all of the allegations contained in the foregoing paragraphs as though fully set forth herein.

99. Go Mortgage had an actual or prospective contracts with Go Mortgage's warehouse lenders, investors and GSE, including but not limited to, Fannie Mae.

100. Chikonde contacted each of these entities and told them false information, including but not limited to, that Go Mortgage had no one to run its capital markets department.

101. Because of Chikonde's actions, some or all of these entities terminated and/or temporarily stopped their business relationship with Go Mortgage. Go Mortgage was forced to explain to these entities that it was appropriately prepared to do business without Chikonde.

102. Go Mortgage also had actual and/or prospective contracts with homeowners.

103. Because of Chikonde's interference, Fannie Mae turned off Go Mortgage's seller / service number, which made Go Mortgage unable to deliver loans.

104. Chikonde's interference was intentional.

105. Chikonde's interference caused Go Mortgage to sustain damages.

106. Chikonde was not justified or privileged to interfere.

107. Chikonde's actions caused Go Mortgage's damages in an amount to be determined at trial, but which is in excess of $75,000.

## SIXTH CLAIM FOR RELIEF
### (Breach of Duty of Good Faith and Loyalty - Wisconsin)

108. Go Mortgage incorporates by reference all of the allegations contained in the foregoing paragraphs as though fully set forth herein.

109. Chikonde was an employee of Go Mortgage and acting on Go Mortgage's behalf when 1) she contacted various entities and told them Go Mortgage was not equipped in capital markets; 2) deleted Go Mortgage's protected data; 3) entered false information on platforms, including Fannie Mae and Optimal Blue; and 4) changed Go Mortgage's passwords and company configurations that have a direct effect on how Go Mortgage performs its core functions.

110. As an employee of Go Mortgage, Chikonde owed Go Mortgage a duty of good faith a fair dealing.

111. Chikonde breached the duty of good faith and loyalty by her actions listed above.

112. Chikonde breached her duty of good faith and loyalty by seeking to undermine the interests of Go Mortgage.

113. Chikonde's actions caused Go Mortgage's damages in an amount to be determined at trial, but which is in excess of $75,000.

**WHEREFORE**, Plaintiff Go Mortgage, LLC respectfully prays this Court issue judgment in its favor and against Defendant Katie Chikonde as follows:

    A.    A Judgment in favor of Go Mortgage on all Claims for Relief;

    B.    Award Go Mortgage, LLC compensatory and punitive damages, costs, expenses, and attorney fees in an amount to be determined at trial, together with pre-judgment and post-judgment interest; and

    C.    Award Go Mortgage, LLC punitive and/or exemplary damages pursuant to Wis. Stat. § 134.90;

    D.    Award Go Mortgage, LLC such other and further relief as this Court finds just and proper.

## JURY TRIAL REQUESTED

Go Mortgage demands a jury trial on all claims so triable.

127994846v1

Respectfully submitted,

*/s/ Lauren A. Kemp*
David K. Stein (0042290)
James D. Abrams (0075968)
Lauren A. Kemp (0093436)
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
Telephone: 614-221-2838
Facsimile: 614-221-2007
dstein@taftlaw.com
jabrams@taftlaw.com
lkemp@taftlaw.com

*Attorneys for Plaintiff*
*Go Mortgage, LLC*

127994846v1